IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

**CHARIA ALYCE WILLIAMS,**

    Plaintiff,

v.                                                  Civil Action No. 3:23cv784

**EQUIFAX INFORMATION SERVICES, LLC,**

    Serve: R/A Corporation Service Co.
             100 Shockoe Slip, Fl. 2
             Richmond, VA 23219

    Defendant.

**COMPLAINT**

Plaintiff, Charia Alyce Williams ("Mrs. Williams"), by and through undersigned counsel, brings this Complaint against Equifax Information Services, LLC ("Equifax" or "Defendant") on the grounds and for the relief set forth herein:

**Preliminary Statement**

1. This is an action for actual, statutory, and punitive damages; costs; and attorney's fees pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act—"FCRA").

**Jurisdiction and Venue**

2. This Court has jurisdiction as to this case under the provisions of 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b)(1) and Local Civil Rule 3(C) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this District and Division, and the Defendant transacts business within this District and Division.

**Parties**

4.     Mrs. Williams is a natural person currently residing in Chester, Virginia. At all times relevant to the Complaint, Mrs. Williams was a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.     Equifax is a for-profit company doing business in the Commonwealth of Virginia. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## Factual Allegations

### *Sections 1681e(b) and 1681i(a) of the FCRA Require Substantive Investigations and Prohibit the Defendant from Merely "Parroting" the Furnisher's Inaccurate Reporting*

6.     "Congress enacted [the] FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See,* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *Id.,* at 36570 (statement of Rep. Sullivan); . . . . In enacting [the] FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

7.     "Section 1681e(b) sets forth the CRA's overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

8. Section 1681i(a), however, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through her dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30–day period[.]

15 U.S.C. § 1681i(a)(1)(A).

9. Section 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term investigation is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

10. It has long been the law that a CRA, such as the Defendant, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the item in dispute. *See, e.g., Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016

WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

11. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

12. As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); see also, Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 3d 426, 430 (4th Cir. 2004).

13. Furthermore, as the Defendant is aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that the Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." Webster's Third New International Dictionary 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." Id. at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

14. It has long been the law—since 1970, in fact—that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

15. Currently, furnishers of credit information including the Defendant's furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. But while the Defendant's duties under 15 U.S.C. § 1681e(b) were enacted in 1970 and have been governed since, the duties on furnishers are much more recent, enacted in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### *Plaintiff Discovers That a Furnisher Was Reporting Inaccurate Information to the CRA Defendants*

16. On September 6, 2022, Plaintiff's husband, Rashad Andre Williams ("Mr. Williams"), filed for an individual Chapter 7 Bankruptcy—Case No. 22-32450-KLP in the U.S. Bankruptcy Court for the Eastern District of Virginia (the "Chapter 7 Bankruptcy").

17. In Mr. Williams' Chapter 7 Bankruptcy, he petitioned the Bankruptcy Court for a discharge of, among other liabilities, his liability for a Synchrony Bank/Generac Consumer Financing ("Generac") line of credit (the "Account"). Pursuant to the automatic stay provided under 11 U.S.C. § 362, Generac was enjoined from "any act to collect, assess, or recover a claim

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

against [him] that arose before the commencement of the case….” Additionally, a discharge was granted to Mr. Williams by the Bankruptcy Court pursuant to 11 U.S.C § 727 on June 2, 2023, and thus his liability to Generac is extinguished.

18. However, as the Account was a joint line of credit with his wife, the Plaintiff, her liability to Generac will remain.

19. Following the filing of the Chapter 7 Bankruptcy—which, as stated above, was an individual filing—Mrs. Williams continued to pay on the Account.

20. In or around November 2022, Mrs. Williams became aware that her credit score experienced a major decline. Bewildered, Mrs. Williams obtained consumer disclosures from TransUnion, LLC ("TransUnion") and Experian Information Solutions, Inc. ("Experian") in an attempt to understand the underlying cause of this event. The consumer disclosures she obtained reported that the Generac Account was detailed as "charged-off" with a past due balance of $10,738.00. This information was false and inaccurate, as Mrs. Williams was neither late in her payments to Generac nor gave permission to close the Account.

21. This discovery left Mrs. Williams distraught—she consistently remains cognizant of her credit and therefore paid her debts on time.

22. In or around November 2022, after becoming aware of this inaccurate reporting, Mrs. Williams communicated with Generac via telephone to dispute the status of the Account. During this telephone call, Generac advised her that it would not correct the defamatory reporting; additionally, Generac stated that Mrs. Williams remained liable for the past due balance of $10,738.00 on the Account.

### *Plaintiff Disputes the Inaccurate Account with the Defendant and Experiences Numerous Credit Denials As a Result of the False Reporting*

23. In or around November 2022, following the telephone call with Generac, Mrs. Williams disputed the inaccurate reporting of the Account with Experian and TransUnion. In addition, Mrs. Williams continued to pay on the Account—despite it being reported as charged-off—to honor the original agreement she had made with Generac.

24. On or about November 8, 2022, Experian generated and transmitted the results from the first dispute to Mrs. Williams. Experian's reinvestigation was blatantly incompetent—not only did Experian fail to correct the inaccurate reporting, but, moreover, updated Mrs. Williams' credit files with further defamatory information. Whereas before the first dispute, her Experian credit files listed the Account status as "charged-off" with a written-off balance of $10,738.00, the updated disclosure changed the current Account balance from $0.00 to $10,738.00 and added a new remark stating that the balance was "past due."

25. On or about November 14, 2022, Mrs. Williams retrieved her Experian consumer disclosure from annualcreditreport.com. This Experian disclosure continued to report the derogatory and false information—a blatant violation of 15 U.S.C. § 1681i considering the previous dispute Mrs. Williams had submitted, which, in addition, was noted in her credit files. The Account continued to report as derogatory; it was detailed as "charged-off" with a past due and overall balance of $10,738.00—solely a result of Experian's incompetent prior reinvestigation. Worsening matters, Experian placed a remark under the Account stating that it was "potentially negative," which only furthered Mrs. Williams' frustration, embarrassment, and mental anguish.

26. On or about November 17, 2022, TransUnion generated and transmitted the results from the first dispute to Mrs. Williams. This reinvestigation was equally inept: TransUnion verified the inaccurate reporting and updated Mrs. Williams credit files to reflect the Account as being "charged-off" with a past due and current balance of $10,738.00.

27. On or about November 19, 2022, Mrs. Williams applied for a vehicle loan at Koons Hyundai. As she had maintained a near perfect credit history over the prior two years, she did not expect to encounter any issues receiving approval for a loan at the interest rate someone with her credit rating and payment history deserved.

28. On or about November 25, 2022, Mrs. Williams received a vehicle loan denial letter from Northwest Federal Credit Union ("Northwest"). Mrs. Williams' loan application was denied based upon an Equifax credit report provided to Northwest on November 25, 2022; this report stated that Mrs. Williams' credit files contained a "serious delinquency," "amount past due on accounts," and that the "time since delinquency is too recent or unknown."

29. On or about December 2, 2022, Mrs. Williams received a vehicle loan denial letter from Langley Federal Credit Union ("Langley Federal"). Langley Federal detailed the reason for the application denial as "delinquent past or present credit obligations"—this decision was based upon an Equifax credit report disbursed to Langley Federal on November 25, 2022.

30. On or about December 3, 2022, Mrs. Williams received a vehicle loan denial letter from M&T Bank. M&T Bank detailed the reason for the loan denial as "previous delinquent credit obligations"—this decision was based upon an Equifax credit report disbursed to M&T Bank on November 25, 2022.

31. On or about December 6, 2022, Mrs. Williams retrieved another copy of her Experian credit files. This Experian report stated that she had a serious delinquency and/or a derogatory indicator in her credit files due to one account, which was "hurting" her credit score. There was only one item reported in her Experian consumer disclosure that qualified—the Generac Account.

32. On or about December 6, 2022, Mrs. Williams, with the assistance of undersigned counsel, sent detailed dispute letters via USPS certified First-class mail, return-receipt requested, to both Experian and Trans Union; Generac was forwarded copies of both these dispute letters. In these dispute letters, Mrs. Williams provided ample information as to why the Account was being reported inaccurately, as well as enclosed portions of her credit files and prior reinvestigation results displaying the defamatory information.

33. On or about December 7, 2022, Mrs. Williams retrieved a copy of her Equifax credit report as disbursed to and published by Credit Karma, Inc. ("Credit Karma"). The Equifax credit report detailed the current and worst payment statuses of the Account as a "charge-off," the Account as "closed," and left a remark stating that it was a "charged-off account." Due to this inaccurate and defamatory reporting, Mrs. Williams requested her official Equifax consumer disclosure from annualcreditreport.com; however, she was unable to access her Equifax credit files and therefore mailed a consumer disclosure request form on December 7, 2022.

34. On or about December 7, 2022, Mrs. Williams retrieved a copy of her TransUnion credit report as disbursed to and published by Credit Karma. The TransUnion credit report was obscene and blatantly false: The Account's current status was detailed as "in collections/charge-off" and "derogatory." The remarks were equally defamatory—TransUnion noted the Account was "charged-off as [a] bad debt" and "profit and loss write-off." Moreover, this inaccurate reporting was published following Mrs. Williams' dispute and TransUnion's reinvestigation; yet, there were no remarks stating that the Account was disputed by the consumer.

35. On or about December 7, 2022, Mrs. Williams received a vehicle loan denial letter from CarMax, Inc. ("CarMax"). CarMax detailed the reasons for the application denial as "serious delinquency," "amount past due on accounts," and "time since delinquency is too recent"—this

decision was based upon an Equifax credit report disbursed to CarMax on November 25, 2022. CarMax, furthermore, noted that Mrs. Williams possessed a "currently past due obligation" which contributed to the loan denial—this defamatory information was also retrieved from the Equifax credit report.

36.     On or about December 8, 2022, Mrs. Williams, with the assistance of undersigned counsel, sent a detailed dispute letter via USPS certified First-class mail, return-receipt requested, to Equifax; Generac, too, was forwarded a copy of this dispute letter. In the dispute letter, Mrs. Williams provided ample information as to why the Account was being reported inaccurately, as well as enclosed portions of her credit files displaying the defamatory information.

37.     On or about December 13, 2022, Equifax sent Mrs. Williams a full copy of her consumer disclosure. This Equifax disclosure detailed the Generac Account as a "charged-off account" with a charge-off amount of $10,738.00; in addition, Equifax reported the date of first delinquency as October 2022 and the date of first "maj[or] del[inquency]" as November 2022. This reporting was defamatory and inaccurate on several levels: Mrs. Williams never closed the Account nor was she ever late in her payments; thus, the two delinquency remarks, charged-off notation, and charged-off amount were entirely incorrect. Furthermore, this disclosure was sent to Mrs. Williams following her dispute with Equifax regarding the Account.

38.     On or about December 17, 2022, Equifax responded to Mrs. Williams' dispute letter. However, instead of reinvestigating the inaccurate Account, Equifax claimed that it could not verify Mrs. Williams' identity—a bizarre assertion considering that Equifax had already mailed Mrs. Williams a full copy of her consumer disclosure on December 13, 2022.

39.     On or about December 18, 2022, Mrs. Williams retrieved a copy of her Equifax credit report as disbursed to and published by Credit Karma. The Equifax report falsely detailed

the Account as "closed" with a "charge[d]-off" payment status; however, the credit report did note that the consumer, Mrs. Williams, had disputed the information and that a reinvestigation was in progress.

40. On or about January 16, 2023, Mrs. Williams, with the assistance of undersigned counsel, sent a second detailed dispute letter via USPS certified First-class mail, return-receipt requested, to Equifax. In this second dispute letter, Mrs. Williams again provided ample information as to why the Account was being reported inaccurately, as well as enclosed portions of her credit files displaying the defamatory information.

41. On or about January 20, 2023, Mrs. Williams retrieved a copy of her Equifax credit report as disbursed to and published by Credit Karma. This credit report continued Equifax's pattern of falsely and inaccurately reporting the Account as "closed" and "charged-off." Furthermore, there were no notations of a consumer dispute—even though the previous Credit Karma Equifax credit report from December 18, 2022 had detailed a dispute and ongoing reinvestigation under the remarks. As such, Mrs. Williams continued to suffer from Equifax neglecting to maintain maximum possible accuracy in preparing her credit files as well as its blatant refusal to perform a reasonable reinvestigation—which, for all intents and purposes, delayed any chances of Mrs. Williams' credit files being corrected in a timely manner and, in addition, failed to convey that the Account had been disputed.

42. On or about January 24, 2023, Mrs. Williams retrieved a copy of her Equifax credit report as disbursed to and published by Credit Karma. This credit report displayed the same inaccurate information as the January 20, 2023 Equifax Credit Karma report and, furthermore, once again failed to note that the Account had been disputed by the consumer, Mrs. Williams.

43. On or about January 30, 2023, Equifax generated and transmitted the results from the second dispute to Mrs. Williams. While Equifax did actually respond to the second dispute instead of merely claiming that it could not verify Mrs. Williams' identity, the response demonstrated that Equifax's reinvestigation was blatantly incompetent and nonsensical. Not only did Equifax fail to correct the inaccurate reporting and continue to falsely report that there was a delinquency on the Account, Equifax updated the Account with information that Mrs. Williams' continued to make timely monthly payments to Generac—a nonsensical result as the Account was reported as delinquent even as the dispute results demonstrated that Mrs. Williams was never late in her payments on the Account.

## Claims for Relief

### Count One—Violation of the Federal Fair Credit Reporting Act
### (15 U.S.C. § 1681e(b))—Suit Against Equifax
### for Actual, Statutory, and Punitive Damages and for Attorney's Fees and Costs

44. Mrs. Williams re-avers and incorporates all other factual allegations set forth in this Complaint.

45. The Defendant violated 15 U.S.C § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Mrs. Williams' consumer reports and credit files published and maintained concerning Mrs. Williams.

46. As a proximate result of the Defendant's violations of 15 U.S.C § 1681e(b), Mrs. Williams suffered actual damages, including but not limited to: negative impact on her credit rating(s); lost opportunities to enter into consumer credit transactions; damage to reputation; embarrassment, humiliation, and other mental and emotional distress.

47. The violations by the Defendant were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n.

48. Mrs. Williams is entitled to recover actual damages, statutory damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n and § 1681o.

### Count Two—Violation of the Federal Fair Credit Reporting Act
### (15 U.S.C. § 1681i(a)(1)(A))—Suit Against Equifax
### for Actual, Statutory, and Punitive Damages and for Attorney's Fees and Costs

49. Mrs. Williams re-avers and incorporates all other factual allegations set forth in this Complaint.

50. The Defendant violated 15 U.S.C § 1681i(a)(1)(A) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the disputed Account from Mrs. Williams' credit files.

51. As a proximate result of the Defendant's violations of 15 U.S.C § 1681i(a)(1)(A), Mrs. Williams suffered actual damages, including but not limited to: negative impact on her credit rating(s); lost opportunities to enter into consumer credit transactions; damage to reputation; embarrassment, humiliation, and other mental and emotional distress.

52. The violations by the Defendant were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n.

53. Mrs. Williams is entitled to recover actual damages, statutory damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n and § 1681o.

### Count Three—Violation of the Federal Fair Credit Reporting Act
### (15 U.S.C. § 1681i(a)(4))—Suit Against Equifax
### for Actual, Statutory, and Punitive Damages and for Attorney's Fees and Costs

54. Mrs. Williams re-avers and incorporates all other factual allegations set forth in this Complaint.

55. The Defendant violated 15 U.S.C § 1681i(a)(4) by failing to review and consider all the relevant information submitted by Mrs. Williams regarding her disputes of the inaccurate Account.

56. As a proximate result of the Defendant's violations of 15 U.S.C § 1681i(a)(4), Mrs. Williams suffered actual damages, including but not limited to: negative impact on her credit rating(s); lost opportunities to enter into consumer credit transactions; damage to reputation; embarrassment, humiliation, and other mental and emotional distress.

57. The violations by the Defendant were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n.

58. Mrs. Williams is entitled to recover actual damages, statutory damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n and § 1681o.

**Count Four—Violation of the Federal Fair Credit Reporting Act**
**(15 U.S.C. § 1681i(a)(5)(A))—Suit Against Equifax**
**for Actual, Statutory, and Punitive Damages and for Attorney's Fees and Costs**

59. Mrs. Williams re-avers and incorporates all other factual allegations set forth in this Complaint.

60. The Defendant violated 15 U.S.C § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Mrs. Williams' credit files or modify the items of information upon a lawful reinvestigation.

61. As a proximate result of the Defendant's violations of 15 U.S.C § 1681i(a)(5)(A), Mrs. Williams suffered actual damages, including but not limited to: negative impact on her credit

rating(s); lost opportunities to enter into consumer credit transactions; damage to reputation; embarrassment, humiliation, and other mental and emotional distress.

62. The violations by the Defendant were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n.

63. Mrs. Williams is entitled to recover actual damages, statutory damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n and § 1681o.

### Count Five—Violation of the Federal Fair Credit Reporting Act
### (15 U.S.C. § 1681i(c))—Suit Against Equifax
### Actual, Statutory, and Punitive Damages and for Attorney's Fees and Costs

64. Mrs. Williams re-avers and incorporates all other factual allegations set forth in this Complaint.

65. Defendant violated 15 U.S.C § 1681i(c) by failing to clearly note in subsequent consumer reports that the information in question was disputed by the consumer—in this case, Mrs. Williams.

66. As a proximate result of Defendant's violations of 15 U.S.C § 1681i(c), Mrs. Williams suffered actual damages, including but not limited to: negative impact on her credit rating(s); lost opportunities to enter into consumer credit transactions; damage to reputation; embarrassment, humiliation, and other mental and emotional distress.

67. The violations by Defendant were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n.

68. Mrs. Williams is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n and § 1681o.

**Demand for Trial by Jury**

69.  Mrs. Williams demands trial by jury in this case.

**Conclusion**

WHEREFORE, Mrs. Williams prays that the Court enter a judgment for compensatory/actual, statutory, and punitive damages against the Defendant, for her attorney's fees and costs; for pre-judgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

Respectfully submitted,

**CHARIA ALYCE WILLIAMS**

By Counsel

*/s/ Drew D. Sarrett*
Drew D. Sarrett (VSB No. 81658)
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Telephone (804) 905-9905
Facsimile: (757) 930-3662
E-mail: drew@clalegal.com

Stephen L. Flores (VSB No. 92900)
FLORES LAW, PLLC
530 E. Main Street, Suite 320
Richmond, Virginia 23219
Telephone: (804) 238-9911
Facsimile: (804) 203-8717
E-mail: stephen@floreslawva.com

*Counsel for Plaintiff*